IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ALVIN REAVES, 312825                        *
      Plaintiff,
   v.                                          *     CIVIL ACTION NO. WDQ-07-1294

SGT. QUENTON RAGIN, et al.                  *
      Defendants.
                                  *****

### MEMORANDUM

This 42 U.S.C. § 1983 civil rights action for damages alleges excessive use of force in violation of the Eighth Amendment against four correctional officers at the Jessup Correctional Institution ("JCI").  Pending is Defendant Ragin, Curtis, and Obinna's Motion to Dismiss or for Summary Judgment, to which Plaintiff has filed his Opposition.[1]  Paper No. 15 & 17.  Upon review of the Complaint and pleadings, the Court finds no need for an oral hearing.  *See* Local Rule 105.6 (D. Md. 2004).  For reasons to follow, Defendants' Motion, construed as a Motion for Summary Judgment, shall be denied.

### Background

Plaintiff alleges that a brutal assault occurred on September 5, 2006, while he was confined at JCI.  He asserts that he initially exchanged "physical blows and then wrestled" with Defendant Nwoji.  Paper No. 1.  Plaintiff states several other officers arrived on the scene, physically restrained him on the floor, and secured him in handcuffs.  *Id*.  He claims he was escorted to the officer's dining room where he was repeatedly punched and kicked in the face, eyes, hand, and torso by Defendants Ragin, Curtis, Obinna, and Nwoji.  *Id*.  Plaintiff alleges he was rendered unconscious by the assault and when he awoke he was being beaten, punched, stomped, kicked, and hit with a padlock and trash can.  *Id*.

---

[1] Service of process was not effected on Defendant Nwoji, who resigned from Department of Public Safety and Correctional Services' employment.  Paper No. 11.

Plaintiff asserts that upon instruction by Ragin, Nwoji took a homemade knife and stabbed Plaintiff four separate times in the back and back of the upper right arm with the "knife stuck deep in the flesh of my right arm." Nwoji then "dragged the blade around to the front of my arm cutting and ripping my flesh." Paper No. 1. Plaintiff claims that other officers arrived on the scene and joined in the physical attack against him, striking him with a closed fist and stomping and kicking him for over 30 minutes until he was again knocked unconscious. Id.

Defendants have filed as exhibits, declarations and records from Plaintiff's base and medical files and argue that they are entitled to judgment in their favor based upon the following information. On September 5, 2006, Plaintiff was working a sanitation detail of the JCI segregation A-Building when he attacked Officer Nwoji from behind for no apparent reason, repeatedly stabbing him with a home made weapon. Paper No. 15, Ex. 1. Nwoji turned and began defending himself against the attack with his fists, striking Plaintiff in his face and torso. Id. A "signal 13" was called by Officer Oriaku who was in the control center and witnessed the attack. Officers Ukwu[2] and Curtis[3] responded to the area. Curtis gave several orders for Plaintiff to drop the weapon but he refused. Curtis then applied a burst of pepper spray towards Plaintiff. Officer Ukwu and Nwoji took Plaintiff to the ground, but he continued his attack on Nwoji. The knife, which was kicked out of Plaintiff's hand, slid underneath a door and onto the tier and was retrieved and secured by officers. Plaintiff was placed in handcuffs and escorted to the Officer's Dining Room ("ODR") in A-Building by

---

[2] Officer Ukwu claims that he heard Officer Nwoji in the lobby shouting "you stabbed me." Paper No. 15, Ex. 4. A Signal 13 was called. Ukwu assisted Nwoji and Curtis in gaining control over Plaintiff and cuffing him. Id. He states Plaintiff was still kicking his legs and head butting after being cuffed. Id.

[3] Officer Curtis maintains he responded to the Signal 13, saw Plaintiff attacking Officer Nwoji by striking him with a weapon in the face and upper torso, and applied one burst of chemical agent to Plaintiff after he refused to drop his weapon. Paper No. 15, Ex. 3. Curtis affirms he took Plaintiff to the Officer's Dining Room and took him to the ground in order to control him after Plaintiff continued to struggle. Id. He denies kicking or punching Plaintiff.

Officers Ragin[4] and Curtis.  He remained combative and attempted to assault Ragin and Curtis with his feet and head, at which time he was taken to the ground and pinned. Captain Thompson arrived and ordered Plaintiff to stop resisting officers so he could be taken to the medical unit without further incident. *Id*.

Records submitted by Defendants indicate that Plaintiff was seen by healthcare personnel who noted some bruises and swelling on Plaintiff's face, particularly around the temporal region, ears, and lips.  There was a small cut noted on Plaintiff's chin and a small tear on his right upper arm.[5]

In his opposition response Plaintiff reiterates the claims raised in his Complaint by affidavit. Paper No. 17.  He claims that Officer Nwoji confronted him in a hostile manner, put his finger in Plaintiff's face, and shoved him, resulting in his engaging in a "one on one altercation" with Nwoji. *Id*.  He affirms that continuous, multiple assaults occurred subsequent to this incident while he was restrained, resulting in serious injuries.   He attaches exhibits which indicate that subsequent to the incident he complained of rib pain, stiffness in his right hand, and blood in his urine.[6] *Id*.

**Standard of Review**

Fed. R. Civ. P. 56(c) provides that:

[Summary judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

[4]   In his declaration Sgt. Ragin affirms he only used force necessary to subdue and control Plaintiff. Paper No. 15, Ex. 2.  He denies kicking and punching Plaintiff and maintains that he did not tell Office Nwoji to stab Plaintiff.  *Id*.  Ragin also states that Plaintiff never lost consciousness.  *Id*.

[5]   No medical records were presented by Defendants. Instead, they rely on a "Matter of Record" completed by a correctional officer on the date of the incident.

[6]   According to Plaintiff's exhibit the urine was tested and showed "+1 to +2" for blood.  Paper No. 17, Ex. 11.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alternation in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [its] pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988).

**Analysis**

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 126 S.Ct. 2378, 2385-86 (2006). Exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendant(s). *See Jones v. Bock*, 127 S.Ct. 910, 919-22 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

This Complaint falls under the exhaustion prerequisites of § 1997e(a), and Plaintiff's case must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd,* 98 Fed. Appx. 253 (4th Cir. June 2, 2004) (per curiam).[7]

---

[7] Under *Chase*, a Maryland inmate may satisfy exhaustion by seeking review of an Administrative Remedy Procedure ("ARP") complaint denial from the Warden to the Commissioner and then appealing the Commissioner's decision to the Inmate Grievance Office ("IGO"), the *final level* of appeal within Maryland's administrative grievance system for prisoners. *See Chase v. Peay*, 286 F.Supp.2d 523 at 529 (emphasis added).

Defendants cite to applicable caselaw and argue in a conclusory manner that "here, it appears Plaintiff did not exhaust administrative remedies." Paper No. 15, Mem. at 7-8. The attachments to the Complaint indicate, however, that Plaintiff did file administrative remedies at the institution, headquarters, and Inmate Grievance Office levels, albeit in an untimely manner. The Court finds that Defendants have failed to me their burden of proving non-exhaustion.

In addition, the Court concludes that there is a genuine and material factual dispute as to whether excessive force was applied in this case. Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992). The Court must look at: the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley v. Albers,* 475 U. S. 312, 321 (1986). Inherent in the protection afforded by the Eighth Amendment is the principle that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9-10. Further, while the prisoner's injury need not be significant to violate the Eighth Amendment, something more than a *de minimis* injury is required in order to prove that excessive force was used. *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (generally, no Eighth Amendment excessive force claim exists where any injury sustained by the plaintiff is *de minimis* and the force is not of a source "repugnant to the conscience of mankind").[8]

---

[8] When determining whether injuries suffered by an inmate at the hands of prison officers are *de minimis*, a court should consider: (1) the context in which the injuries were sustained, *i.e.,* was there a disturbance which required the use of force; (2) did the inmate seek medical care; (3) were any injuries documented in the medical records generated shortly after the incident; and (4) are the documented injuries consistent with the prisoner's allegations of excessive force or are they more consistent with the application of the amount of force necessary under the circumstances of the particular incident. *See*

Plaintiff's Complaint and Opposition level claims of excessive force set out in terms of brutal and prolonged assault during the morning of September 5, 2006.  Defendants do not argue that Plaintiff's injuries were *de minimis*, but they opine that the injuries were consistent with the accounts provided by Defendants.   They maintain that Plaintiff's account of the incident is "simply beyond belief," particularly in assessing the injuries he sustained. The Court finds, however, that even if Plaintiff's shank assault against Office Nwoji is true there remain too many issues of material fact concerning the need for force, the amount of force applied against Plaintiff, and the extent of Plaintiff's injuries to enter judgment in Defendants' favor.  Credibility determinations are to be left for the trier of fact.   Defendants' Motion for Summary Judgment shall therefore be denied.[9]  A separate Order shall follow reflecting the decision of this Memorandum.[10]

Date: December 10, 2007                       /s/
                                    William D. Quarles, Jr.
                                    United States District Judge

---

*Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998); *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998); *Riley v. Dorton*, 115 F.3d 1159, 1168 (4th Cir. 1997); and *Norman*, 25 F.3d at 1264.

[9]  Plaintiff has filed a Motion to Compel claiming that officers at the North Branch Correctional Institution ("NBCI") took his legal materials on or about November 20, 2007.  Paper No. 18.  He seeks the return of the documents.  Defendants shall file a show cause response to this request.

[10]  Plaintiff, who has been granted leave to proceed in forma pauperis, shall be afforded the opportunity to request the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1).