IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ALVIN REAVES, JR.,

    Plaintiff,

        v.                    CIVIL NO.: WDQ-07-1294

QUENTON RAGIN, *et al.*,

    Defendants.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Alvin Reaves, Jr., sued Sergeant Quenton Ragin, Officer Joseph Curtis, Officer Eze Nwoji, and Officer Ukwu Obinna under 42 U.S.C. § 1983 for excessive force. For the following reasons, the motions for summary judgment of Reaves, Ragin, and Curtis will be denied, and Obinna's motion for summary judgment will be granted.

I. Background[1]

On September 5, 2006, Reaves was housed at the Jessup Correctional Institution ("JCI") in Jessup, Maryland. Compl. ¶ 1. That morning, Reaves and Officer Eze Nwoji "exchange[d] physical blows" and wrestled. *Id.* Reaves stabbed Nwoji with a

---

[1] In reviewing the motion for summary judgment, the non-movant's evidence "is to be believed, and all justifiable inferences are to be drawn in [their] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

homemade knife.  Reaves Dep. 16:2-8, July 31, 2009.[2]  After a "signal 13"[3] was issued, Officer Ukwu Obinna grabbed Reaves from behind, and Officer Joseph Curtis "utilized a small burst of pepper spray" to subdue Reaves.  Paper No. 51, Ex. 3 at 2 (Serious Incident Report); see also Curtis Aff. ¶ 2.[4]  While the officers restrained Reaves on the floor, he lost the knife.  Paper No. 51, Ex. 3 at 2.  Sergeant Quenton Ragin retrieved the knife, which had slid under the door of another wing, and placed it in his pocket.  Id.; Ragin Dep. 63:1-5, July 15, 2009.  Ragin then found Reaves "resisting and being combative" with the other officers.  Ragin Aff. ¶ 3.  Ragin and Curtis escorted Reaves, then handcuffed, to the Officers Dining Room ("ODR").  Reaves Dep. 21:15-17.

Reaves and the defendants dispute what happened in the ODR.  Reaves alleges that officers beat him in the ODR for 15 to 20 minutes until he was unconscious.  Reaves Dep. 21:19-20; see also Compl. ¶ 2.  Reaves asserts that Ragin "slammed [him] to

---

[2] On July 13, 2007, Reaves received a 12-year sentence for attempted second-degree murder of Nwoji for this incident. Reaves Dep. 8:10-15.

[3] A "signal 13" is the code for an officer in need of assistance. Ragin Dep. 42:21-22, July 15, 2009.

[4] The defendants assert that they acted within the Division of Correction Directive's Use of Force Guidelines, which prohibit excessive force but authorize officers to "control or regain control of the situation whe[n] there is a clear and present danger to staff, the public and/or inmate(s)."  Paper No. 51 at 14, Ex. 7 at 3.

2

the ground" and kicked, punched, and hit him. Reaves Dep. 21:20-22:1. Reaves contends that he was stabbed in his arm and back after being subdued. Paper No. 54 at 3.

In his cross motion for summary judgment and reply, Reaves alleges that one of the defendants must have stabbed him in the ODR because "Reaves had not suffered any previous injury to his arm" before the incident. See Paper No. 54 at 3, Ex. 17 (March 13, 2003, photo showing no arm injury); Paper No. 56 at 1. In his complaint and deposition, Reaves asserted that Ragin instructed Nwogi to stab Reaves "four times in [his] back and one time in [his] right arm," ripping the knife "all the way to the front of [his] arm." Reaves Dep. 22:3-10; see also Compl. ¶ 3.

Ragin asserts he used only "necessary" force to subdue Reaves and never kicked or punched him after handcuffing Reaves and escorting him to the ODR. Ragin Aff. ¶ 4. He denies instructing Nwoji to stab Reaves, as Nwoji was being treated for his injuries and could not have entered the ODR. Id. Ragin also denies that Reaves became unconscious. Id.

Reaves says Curtis was with the officers who beat him in the ODR. Reaves Dep. 21:19-20; see also Compl. ¶ 2. Reaves also asserts that Curtis may have been "one of the Defendants [who] used [the] knife to slice" his arm. Paper No. 54 at 7. Curtis states that he and Ragin had to "tak[e Reaves] to the

3

ground" in the ODR to "control him," but denies kicking or punching Reaves or using unnecessary force. Curtis Aff. ¶¶ 2-3.

Reaves has not said that Obinna was in the ODR. Obinna has testified that he never went to the ODR because he escorted Nwoji to get medical treatment. Obinna Aff. ¶ 2.

A medical report, issued the day of the fight, noted that Reaves had a "small tear on the right upper arm." Paper No. 54, Ex. 16. That same day, Michael Hofmann, an internal investigations detective, photographed Reaves's arm and sterile dressing, but not the wound. Hofmann Dep. 36:3-13, Sept. 30, 2009. Reaves's medical expert, Dr. Brian R. Gastman,[5] examined October 2009 photographs of Reaves's arm. Paper No. 54, Ex. 15. Dr. Gastman concluded that Reaves's scar was "consistent with a slicing wound from a knife/sharp object," did not appear to "be from a defensive wound," was "consistent with Mr. Reaves being immobile," and did "not appear to be the result of a self-inflicted wound." *Id.*[6]

On May 14, 2007, Reaves filed a pro se complaint under 42 U.S.C. § 1983. On August 17, 2007, defendants Ragin, Curtis,

---

[5] Dr. Gastman is with the University of Maryland Medical School's Plastic Surgery Division. Paper No. 54, Ex. 15.

[6] Dr. Gastman testified that Reaves did not have the scar when he was committed to the JCI. *See* Gastman Dep. 17:15-16, Feb. 4, 2010.

and Obinna answered.[7] On October 29, 2007, the defendants moved to dismiss or, in the alterative, for summary judgment. Paper No. 15. On November 9, 2007, Reaves opposed the defendants' motion. Paper No. 17. On December 10, 2007, this Court denied the defendants' motion. Paper No. 21. On March 4, 2008, this Court granted Reaves's motion to appoint counsel. Paper No. 27.

On March 31, 2010, the defendants again moved to dismiss or, in the alterative, for summary judgment. Paper No. 51. On April 14, 2010, Reaves opposed that motion and filed a cross motion for partial summary judgment on liability. Paper No. 54. On April 28, 2010, the defendants opposed Reaves's motion and filed their reply. Paper No. 55. On May 12, 2010, Reaves filed his reply. Paper No. 56.

II. Analysis

  A. Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. The Court should "accept as true all well-pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993), but the Court must be able to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

---

[7] Process was not accepted for Nwoji because he has resigned from state service. Paper No. 11.

5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

If the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, it treats the motion as one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). "When a party is aware that material outside the pleadings is before the court, the party is on notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).

Under Rule 56(c), summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering the motion, "the judge's function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248.

The Court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in h[is] favor," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002), but the Court

must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial," *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (citation and internal quotation marks omitted).

  B. Excessive Force Claim

Under 42 U.S.C. § 1983, plaintiffs may bring a civil action to redress constitutional violations. Under the Eighth Amendment, prison officials are liable for using force "maliciously and sadistically to cause harm" instead of "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (citing *Whitley v. Albers*, 475 U.S. 312 (1986)).

An excessive force claim involves balancing: the need for the applied force; the relationship between the need and amount of force; the extent of the injury; the extent of the threat reasonably perceived by officials; and attempts to mitigate the severity of a forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). The primary focus of an excessive force claim is the use of force, not the injury suffered. *See Wilkins v. Gaddy*, 130 S. Ct. 1175, 1178–79 (2010) (inmate may pursue an excessive force claim even if he "escape[s] without serious injury"); *see also Hill v. O'Brien*, No. 09-6823, 2010 WL 2748807, at *1 (4th Cir. July 12, 2010).

1. Reaves's Motion for Partial Summary Judgment

Reaves contends that the "force used by the Defendants *after* [he] was disarmed, placed in restraints and taken into isolation in the ODR, was excessive." Paper No. 56 at 2. Reaves focuses on the knife wound in the ODR, either by a defendant or by Nwoji at Ragin's command. *See* Reaves Dep. 22:1– 10 (Ragin told Nwogi to stab him); Paper No. 54 at 7 ("one" of the defendants cut his arm).

The defendants deny "assault[ing Reaves] in the ODR" or "stabbing [Reaves] with the knife." Paper No. 55 at 7. Curtis and Ragin[8] maintain that they never kicked or punched Reaves and used only necessary force to subdue him. Curtis Aff. ¶¶ 2–3; Ragin Aff. ¶ 4. They argue that Reaves treats defendants "collectively as having stabbed [him], ignoring all the evidence and [Reaves's] assertions in his pro se complaint where he places the blame solely on Officer Nwoji." Paper No. 55 at 7. They further deny that Nwoji was told to stab Reaves because they "left Officers Nwoji and [Obinna] in the lobby before reaching the ODR." Curtis Aff. ¶ 3; Ragin Aff. ¶ 4.

Reaves's expert Dr. Gastman does not establish how Reaves was injured. Dr. Gastman, who examined photographs of Reaves's arm three years after the incident, did "not actually examine[]

---

[8] Officer Obinna states that he was not in the ODR. Obinna Aff. ¶ 2.

8

Mr. Reaves," or obtain medical documents about the wound. Paper No. 54, Ex. 15. Dr. Gastman did not know what caused the injury, only that it was a "sharp object." Gastman Dep. 26:6.

Detective Hofmann, who photographed Reaves's arm while it was wrapped in sterile dressing, never examined Reaves's arm and believes "the injury could have occurred other than [by] being stabbed." Hofmann Dep. 36:3-13, 59:5-6.

There is a genuine issue of material fact. A reasonable jury could find that Ragin and Curtis were following the Use of Force Guidelines to "control or regain control of the situation whe[n] there is a clear and present danger to staff, the public and/or inmate(s)." Paper No. 51, Ex. 7 at 3. Accordingly, Reaves's cross motion for partial summary judgment on liability must be denied.

2. Ragin's Motion for Summary Judgment

Reaves contends that Ragin punched and kicked him in the ODR and hit him with trash cans and a lock. Reaves Dep. 21:20-22:1; *see also* Paper No. 54 at 3. Reaves also alleges that Ragin either told Nwoji to stab him or stabbed Reaves himself. *See* Reaves Dep. 22:1-10; Paper No. 54 at 3. Ragin admits using force against Reaves, but denies that it was excessive. Ragin Aff. ¶ 4.

Although the parties agree that Ragin used force against Reaves in the ODR, the degree of force and intent with which it

9

was used is disputed.  *See Hudson v. McMillian*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312).  It is also disputed whether Ragin stabbed Reaves or directed Nwoji to.  Because a reasonable jury could find that Ragin used excessive force against Reaves in the ODR, there is a genuine issue of material fact about his liability.  *See Anderson*, 477 U.S. at 248.  Ragin's motion for summary judgment must be denied.

    3. Curtis's Motion for Summary Judgment

There is no dispute that Curtis used force against Reaves in the ODR, but there is a genuine issue of material fact whether Curtis used excessive force.  Curtis denies using excessive force to control Reaves.  Curtis Aff. ¶ 3.  Reaves groups Curtis with the attacking officers in the ODR and asserts that Curtis may have cut Reaves's arm.  Reaves Dep. 21:19-20; Paper No. 54 at 7.  A reasonable jury could determine that Curtis used excessive force against Reaves in the ODR.  *See Anderson*, 477 U.S. at 248.  Thus, Curtis's motion for summary judgment must be denied.

    4. Obinna's Motion for Summary Judgment

It is undisputed that Obinna was not in the ODR when Reaves was attacked.  Reaves has consistently maintained that it was Ragin and Curtis who escorted him to the ODR.  *See, e.g.*, Reaves Dep. 21:15-17; Paper No. 54 at 4.  Obinna has testified that he escorted Nwoji to the medical unit while Ragin and Curtis took

10

Reaves to the ODR.  *See* Obinna Aff. ¶ 2.  Reaves has presented no evidence that Obinna was in the ODR.  *See, e.g.*, Paper No. 51, Ex. 3 at 2 (Serious Incident Report stating that "Reaves was handcuffed and escorted to the [ODR] . . . and was again taken to the floor by Sgt. Quinton Ragin and Ofc. Curtis to regain control").

As there is no evidence that Obinna was in the ODR, there is no evidence that he used excessive force against Reaves there.  As Obinna is entitled to judgment as a matter of law, his motion for summary judgment must be granted.[9]

C. Qualified Immunity

Defendants assert they are entitled to qualified immunity if Reaves has meritorious claims.  Paper No. 51 at 17–18. Qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Slattery v. Rizzo*, 939 F.2d 213, 216 (4th Cir. 1991) (defense is applicable to excessive force allegations).  When resolving a qualified immunity claim, the court must determine: (1) whether the plaintiff has alleged

---

[9] Force that Obinna may have used against Reaves before the ODR altercation is not at issue; Reaves has urged the Court to focus on "what happened [in the ODR] after . . . Reaves was subdued." Paper No. 54 at 1.

facts that the government official violated a constitutional right; and (2) whether the right was "clearly established" when the defendant engaged in misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009) (courts may "decid[e] which of the two [*Saucier*] prongs . . . should be addressed first").

If there is any material factual dispute about a defendant's conduct, "summary judgment on qualified immunity grounds is improper."[10] In this case "[i]t is necessary to determine which version of the facts is true in order to determine if the officers' actions were reasonable." *Tringo*, 1993 WL 192758, at *2. Because neither Ragin nor Curtis may succeed at the summary judgment stage "in the face of conflicting testimony," *Rainey*, 973 F.2d at 325, their motions for summary judgment based on qualified immunity must be denied.

---

[10] *Rainey v. Conerly*, 973 F.2d 321, 324 (4th Cir. 1992); *see also Trigo v. Moore*, No. 92-1516, 1993 WL 192758, at *2 (4th Cir. June 7, 1993) (vacating directed verdict in excessive force case under *Rainey*). In *Rainey*, a pretrial detainee brought an excessive force claim against a prison guard. *Id.* at 322. The district court denied the guard's motion for summary judgment on qualified immunity grounds "due to factual disputes in the record." *Id.* at 323. The Fourth Circuit affirmed, explaining that "the determination of what actually happened" turned on assessing the credibility of the detainee and the guard. *Id.* at 324. This assessment was a "disputed issue of fact" and could not be resolved on summary judgment. *Id.*

12

III.  Conclusion

For the reasons stated above, the motions for summary judgment of Reaves, Ragin, and Curtis will be denied, and Obinna's motion for summary judgment will be granted.

<u>October 6, 2010</u>                              _____/s/_____
Date                                         William D. Quarles, Jr.
                                             United States District Judge