IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

ALVIN ANDREW REAVES, JR.,     *

    Plaintiff,     *

    v.     *     CIVIL NO.: WDQ-07-1294

QUENTIN RAGIN, *et al.*,     *

    Defendants.     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Alvin Andrew Reaves, Jr. sued Sergeant Quentin Ragin and Correctional Officer Joseph Curtis (the "defendants") under 42 U.S.C. § 1983 for excessive force. For the following reasons, Reaves's motion to exclude evidence of his attack on Correctional Officer Nwoji and violent prison incidents was denied; Reaves's motion to exclude untimely-identified witnesses and documents was granted; and the defendants' motion to exclude part of an expert report and accompanying deposition testimony was denied.

I. Background

On March 13, 2003, Maryland Department of Public Safety and Correctional Services officials photographed Reaves's right arm, which showed no scar. *See* ECF No. 54, Ex. 17.

On August 10, 2005, while housed at the Eastern Correctional Institution in Westover, Maryland, Reaves attempted to cut himself to obtain medication. *See* ECF No. 74; ECF No. 85 at 6.

In 2005, Reaves was involved in a prison altercation in which he was injured; that year, he also attempted suicide by cutting himself.

On September 5, 2006, while housed at the Jessup Correctional Institution ("JCI") in Jessup, Maryland, Reaves stabbed Officer Eze Nwoji with a "shank," a homemade knife. ECF No. 60 at 3; ECF No. 74 at 2; ECF No. 77 at 1.

Ragin, Curtis, and others disarmed Reaves. ECF No. 74 at 2. Ragin retrieved the knife. ECF No. 77 at 1. Ragin and Curtis took Reaves, then handcuffed, to the Officers' Dining Room (the "ODR"). *See id.* at 1-2.

Reaves asserts that in the ODR, the defendants beat him unconscious and cut his upper right arm with the knife. ECF No. 60 at 2. He alleges that he was attacked for at least 45 minutes. *See* Compl. 5. The defendants assert that Reaves continued to kick and head-butt in the ODR, and they forced him to the ground to restore discipline. ECF No. 60 at 3-4. They deny using excessive force or stabbing him. *See* ECF No. 74 at 5-7.

JCI medical records (the "Medical Log") note that Reaves was "escorted to medical" at 6:38 AM. ECF No. 79, Ex. A at 4. A nurse's progress notes indicate that Reaves was evaluated at 7:10 AM. ECF No. 79, Ex. H at 3. Reaves's arm was bandaged, and a photograph was taken of his dressed arm. *See* ECF No. 60 at 8.

On May 14, 2007, Reaves filed a pro se complaint against the defendants and others under 42 U.S.C. § 1983 for excessive force.

Reaves pled guilty to attempted second-degree murder of Nwoji for the September 5, 2006 stabbing, and was sentenced to 12 years imprisonment for that offense. ECF No. 57 at 2 n.2

On March 19, 2008, counsel for Reaves were appointed.

In July and November 2008, Reaves served interrogatories and document requests on the defendants for, *inter alia*, all documents concerning the September 5, 2006 incident, and the identification of all witnesses that the defendants intended to call at trial. *See, e.g.*, ECF No. 79, Ex. E ¶ 3; ECF No. 79, Ex. J ¶ 14.

On October 30, 2009, a photograph was taken of Reaves's right arm, showing a scar. *See* ECF No. 60 at 8; ECF No. 74 at 6 n.4.

Reaves retained Dr. Brian R. Gastman, then a Maryland resident, as an expert. *See* ECF No. 88 at 2. Dr. Gastman is a plastic surgeon with more than five years of experience. ECF No. 81, Ex. A at 2.[1]

On December 1, 2009, he reviewed the October 30, 2009 and other photographs of Reaves's arm, and Reaves's limited medical

---

[1] Dr. Gastman is a member of the American Medical Association and the American Board of Plastic Surgery. ECF No. 81, Ex. A at 6. In 2009, Dr. Gastman worked and taught in the University of Maryland School of Medicine's Department of Plastic Surgery. *Id.* at 3.

report. ECF No. 81 at 5-6, Ex. A; Gastman Dep. 12:14-16. Based on his "understanding of the [September 5, 2006] events," Dr. Gastman prepared a report opining that Reaves's scar:

(1) is "consistent with a slicing wound from a knife/sharp object";
(2) does "not appear to be from a defensive wound";
(3) is "consistent with Mr. Reaves being immobile or otherwise unable to stop the injury" because of the "length of the scar going around the arm in at least two directions"; and
(4) does "not appear to be the result of a self-inflicted wound as it would be very difficult for Mr. Reaves to reach his own arm to cut himself, particularly if he was in handcuffs."

ECF No. 81 at 5-6, Ex. A. Dr. Gastman noted that he had not examined Reaves or medical documents about the wound. *Id.*

On February 4, 2010, Dr. Gastman was deposed. *See* ECF No. 77 at 4. In examining the October 30, 2009 photograph, Dr. Gastman testified that the scar on Reaves's arm did not appear to be self-inflicted because it "gets all the way [to the] medial [side of his arm], [so] even if [he] took his left hand he would have to have, almost some type of sickle knife, and then be able to endure tremendous pain all the way around his arm." Gastman Dep. 27:5-18. Dr. Gastman also testified that he could not "exclude any other object causing [the scar]." *Id.* at 27:20-21.

By February 26, 2010, discovery closed. *See* ECF No. 48.

The parties' joint Pre-Trial Order identified the witnesses each party expected to call at trial. ECF No. 60 at 11-12. Reaves noted that he expected to call Cherie Peay, JCI's assistant

4

warden, as the prison's corporate designee. *Id.* at 11.

On May 26, 2011, Reaves moved in limine to exclude evidence of his attack on Nwoji and violent prison incidents. *See* ECF No. 67.

On June 1, 2011, the defendants discovered the Medical Log during a visit to JCI. ECF No. 85 at 2. They immediately sent a copy of the Medical Log to Reaves.

On June 3, 2011, the defendants opposed Reaves's May 26, 2011 motion in limine. ECF No. 74.

On June 4, 2011, the parties stipulated that Dr. Gastman "may be presented at trial by way of designation from his February 4, 2010 deposition testimony and December 1, 2009 expert report." ECF No. 77 at 1; ECF No. 88 at 2.[2]

On June 9, 2011, the defendants informed Reaves that they would introduce the Medical Log at trial, and then reserved the right to call two "rebuttal" witnesses about Reaves's medical and mental health records. ECF No. 79 at 1-2. On June 14, 2011, Reaves moved in limine to exclude this evidence as untimely disclosed. *Id.* at 1-9. That day, Reaves also replied to the

---

[2] On June 6, 2011, the defendants moved in limine to exclude Reaves from seeking punitive damages. ECF No. 76. On June 15, 2011, the defendants indicated that they would resolve this issue by moving for judgment as a matter of law during trial. The outcome of that motion will govern whether punitive damages will be submitted to the jury. If the motion is denied, the Court will permit the jury to consider punitive damages in a second bifurcated phase. A decision on this motion was deferred until trial.

defendants' opposition to his May 26, 2011 motion in limine. ECF No. 80.

On June 15, 2011, the defendants moved in limine to exclude paragraphs three and four of Dr. Gastman's expert report and references in his deposition to them. ECF No. 81. On June 16, 2011, the defendants opposed Reaves's June 14, 2011 motion in limine. ECF No. 85.

Trial began June 20, 2011. That day, Reaves opposed the defendants' June 15, 2011 motion in limine, ECF No. 88, and a motions hearing was held.

II. Reaves's Motion in Limine to Exclude Evidence of the Attack on Nwoji and Violent Prison Incidents

Reaves moved to exclude (1) evidence of his attack on Nwoji, and (2) violent prison incidents that could have caused the scar on his arm. ECF No. 67 at 5-6; ECF No. 80 at 3 n.2, 4-5.[3] The defendants assert that this evidence is admissible. ECF No. 74 at 3-9.

A. Reaves's Attack on Nwoji

Reaves moved to exclude as irrelevant his attempt to murder Nwoji on September 5, 2006.[4] See ECF No. 67 at 6; ECF No. 80 at

---

[3] Reaves does not seek damages for any other injury he allegedly suffered on September 5, 2006. Thus, the parties agree that only incidents arguably related to his scar are relevant.

[4] At the motions hearing, the defendants agreed to proffer only "evidence" of the attack, not Reaves's prior criminal history.

2-3. The defendants assert that this evidence is relevant to their use of force. ECF No. 74 at 8.

Fed. R. Evid. 404(b) is an inclusionary rule; evidence of other crimes or acts is admissible unless it proves only criminal disposition. *United States v. Sanchez*, 118 F.3d 192, 195 (4th Cir. 1997). Evidence is admissible if it is (1) relevant to some issue other than the defendant's character, (2) necessary,[5] and (3) reliable. *Rawle*, 845 F.2d at 1247. Further, the probative value of the evidence must not be substantially outweighed by the potential for unfair prejudice. *United States v. Hodge*, 354 F.3d 305, 312 (4th Cir. 2004) (*citing* Fed. R. Evid. 403).

Evidence of Reaves's attack on Nwoji is relevant. Reaves has sued the defendants for using excessive force. The focus of an excessive force claim is whether prison officials used force "maliciously and sadistically to cause harm" instead of "in a good-faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992) (*citing Whitley v. Albers*, 475 U.S. 312 (1986)). Evidence suggesting that Reaves had attempted to seriously injure or kill Nwoji, and remained combative, is

---

[5] Evidence is necessary when it is probative of an essential claim or element of an offense, or provides part of the context of the offense. *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997); *United States v. Rawle*, 845 F.2d 1244, 1247 n.4 (4th Cir. 1988).

relevant to whether Ragin and Curtis needed to subdue him with force, and how much force was appropriate.

Evidence of the attack on Nwoji also provides context for the defendants' use of force in the ODR.[6] The Court will evaluate the reliability of the evidence as it is introduced. As evidence of the attack is "[not] more prejudicial than probative," it is "necessary to provide the jury with a full account of the events surrounding [Reaves's excessive force] claims against [the defendants]." *Greene*, 1997 WL 351298, at *4. Thus, evidence of Reaves's attack on Nwoji was admitted.

B. Reaves's Violent Prison Incidents

Reaves moved to exclude "prison incidents regarding alleged incidents of aggression, violence, and other bad behavior." ECF No. 80 at 3 n.2; *see also* ECF No. 67 at 6. The defendants assert that Reaves's "history of violence in prison is relevant to [whether his] alleged arm injury resulted from his altercation with [the defendants, or] other altercations with correctional staff or other inmates[.]" ECF No. 74 at 3. At the motions hearing, the

---

[6] *Rawle*, 845 F.2d at 1247 n.3 ("[E]vidence is necessary [when] it furnishes part of the context of the crime."); *cf. Greene v. Distelhorst*, No. 96-3044, 1997 WL 351298, at *1, *3-*4 (6th Cir. June 23, 1997) (in case of excessive force during arrest, district court properly admitted under Rule 404(b) evidence of plaintiff's conduct leading to and convictions stemming from the arrest because this evidence "provide[d] the jury with a full account of the events giving rise to [plaintiff's] claims").

8

defendants noted Reaves's 2005 prison records that he had been scratched in an altercation.

Because Reaves has no direct proof that the defendants cut his arm on September 5, 2006, it appears that he will argue that the jury should infer this. Reaves offered the March 13, 2003 photograph of his arm with no scar, the September 5, 2006 photograph of his bandaged arm, and the October 30, 2009 photograph of his scarred arm. ECF No. 60 at 8-9.

Evidence of violent prison incidents that could have caused Reaves's scar, such as the 2005 records that he was scratched during an altercation, is relevant and necessary. Evidence that his wound came from another source is probative of whether the defendants stabbed him. ECF No. 60 at 2.[7]

Accordingly, Reaves's motion to exclude evidence of his attack on Nwoji and violent prison incidents that could have caused his scar was denied.

---

[7] See, e.g., Giles v. Rhodes, No. 94 Civ. 6385(CSH), 2000 WL 1425046, at *14-*15 (S.D.N.Y. Sept. 27, 2000) (in an excessive force case, admitting under Rule 404(b) evidence of a prisoner's violent incident that could have caused his alleged injuries; the defendants were to be "allowed to show that all or some of [his] injuries were caused during [that] incident" and not by them); see also Queen, 132 F.3d at 997 (evidence is necessary when "probative of an essential claim . . . of the offense").

III. Reaves's Motion in Limine to Exclude Untimely-Identified Witnesses and Documents

The defendants seek to (1) introduce the Medical Log, and (2) reserve the right to call two rebuttal witnesses, Nurse Jill Danzilo[8] and Dr. James Holwager,[9] who will testify as to the content of Reaves's medical and mental health records. ECF No. 85 at 4-6. Neither will testify as an expert. *Id.* at 5-6.

In moving to exclude this evidence, Reaves asserts that the defendants waited until June 9, 2011, less than two weeks before trial, to seek the introduction of the Medical Log and disclose these witnesses. ECF No. 79 at 4.

Under Fed. R. Civ. P. 37(c)(1):

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

In determining whether a late disclosure is substantially justified or harmless, courts consider:

(1) the surprise to the party against whom the evidence would be offered;
(2) the ability of that party to cure the surprise;
(3) the extent to which allowing the evidence would disrupt the trial;

---

[8] A Correctional Medical Services regional manager. ECF No. 85 at 5.

[9] Acting Director of Mental Health Services, a division of the Maryland Department of Public Safety and Correctional Services. ECF No. 85 at 6.

(4) the importance of the evidence; and
(5) the non-disclosing party's explanation for its failure to disclose the evidence.

*Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003).[10]

A. The Medical Log

Because the Medical Log notes that Reaves was taken to the medical unit at 6:38 AM, the defendants argue that Reaves could not have been beaten in the ODR for 45 minutes, as he alleges. *See* Compl. 5; ECF No. 79, Ex. A at 4; ECF No. 85 at 4.

Reaves argued that this document is "contradictory" because when a nurse saw him that morning, she noted 7:10 AM in her progress notes as the time that she evaluated him. *See* ECF No. 79 at 7 n.3; ECF No. 79, Ex. H at 3. Reaves also asserted unfair surprise. *Id.* at 6.

As Reaves notes, it is unlikely that he can cure the surprise of the Medical Log at this late date. ECF No. 79 at 6. Thus, Reaves's motion to exclude the Medical Log was granted.

B. Nurse Danzilo and Dr. Holwager

Because the defendants "do not know what [Reaves] will say [about his September 5, 2006] injuries," they sought the right to call Nurse Danzilo to testify "whether any heretofore unknown and

---

[10] The Court need not "expressly consider each factor when evaluating discovery violations." *Hoyle v. Freightliner, LLC*, --- F.3d ----, 2011 WL 1206658, at *5 (4th Cir. Apr. 1, 2011) (*citing Southern States*, 318 F.3d 592).

11

undiagnosed ailment is contained in [his] records." ECF No. 85 at 4. Similarly, because the defendants "do not know what [Reaves] will say regarding his mental health records," they sought the right to call Dr. Holwager, who will "highlight" those records. ECF No. 85 at 6. Dr. Holwager was also expected to testify that the records provide that Reaves cut himself on August 10, 2005 to obtain medication. *Id.*

As Reaves notes, neither Nurse Danzilo nor Dr. Holwager was identified until June 9, 2011--long after discovery and the joint Pre-Trial Order. ECF No. 79 at 2.[11] Further, their expected testimony appeared unnecessary. The defendants asserted that Nurse Danzilo and Dr. Holwager would "merely" testify "as to what [Reaves's records] say," ECF No. 85 at 5-6, to which the parties have stipulated. At the motions hearing, the parties agreed to admit Reaves's August 10, 2005 records and accompanying photographs that he cut himself to obtain medication. Reaves also indicated that he had "no problem" with the admissibility of psychological records regarding his suicide attempt.

More importantly, the defendants did not explain the late

---

[11] *See* ECF No. 79, Ex. E ¶ 3 (Reaves's Nov. 25, 2008 request for the identification of witnesses the defendants seek to call at trial); ECF No. 48 (Court order directing discovery to close by Feb. 26, 2010); ECF No. 60 at 11-12 (Nov. 9, 2010 Pre-Trial Order identifying the witnesses each party expected to call at trial).

disclosure.[12] Rule 37 does not allow counsel to "simply fail[] to comply with [a discovery] schedule"[13] and thus violate the purpose of the rule, which is to "prevent surprise and prejudice to the opposing party."[14]

Accordingly, Reaves's motion to exclude was granted.

IV. The Defendants' Motion in Limine to Exclude Part of Dr. Gastman's Expert Report and Accompanying Deposition Testimony

The defendants moved to exclude paragraphs three and four of Dr. Gastman's December 1, 2009 expert report and his February 4, 2010 deposition testimony referencing them. See ECF No. 81 at 1.[15]

Paragraphs three and four provide that Reaves's scar:

(3) is "consistent with Mr. Reaves being immobile or otherwise unable to stop the injury" because of the "length of the scar going around the arm in at least two directions"; and
(4) does "not appear to be the result of a self-inflicted wound as it would be very difficult for Mr. Reaves to reach his own arm to cut himself, particularly if he was in handcuffs."

---

[12] See, e.g., Southern States, 318 F.3d at 598 (district court properly excluded untimely evidence under Rule 37 because, inter alia, the non-disclosing party "could not explain" its late disclosure).

[13] Proffit v. Veneman, No. 5:01CV00067, 2002 WL 1758232, at *3 (W.D. Va. July 15, 2002) ("Such a failure is not of the 'harmless' variety contemplated by [Rule 37].").

[14] Contech Stormwater Solutions, Inc. v. Baysaver Techs., Inc., 534 F. Supp. 2d 616, 622 (D. Md. 2008).

[15] The parties previously stipulated to this evidence. See ECF No. 77 at 1.

ECF No. 81, Ex. A at 1.

The defendants assert that Gastman's opinion that Reaves "must" have been immobile when cut has no basis, and paragraph four merely speculates that Reaves could not have cut himself. They argued that Dr. Gastman is unqualified because he is not an expert in kinesiology or related fields. ECF No. 81 at 4. Reaves asserts that Dr. Gastman's opinions are admissible. *See* ECF No. 88 at 6-7.

Unless an expert's opinion is based on assumptions that "find no support in the record,"[16] the fallibility of an expert's assumptions affect "the weight of his testimony, not its admissibility."[17]

Dr. Gastman's knowledge, skill, and experience in plastic surgery, including treating prisoners with scars, qualified him to opine about Reaves's arm injury.[18] Paragraph three simply

---

[16] *Tyger Const. Co. Inc. v. Pensacola Const. Co.*, 29 F.3d 137, 144 (4th Cir. 1994).

[17] *Wilder Enters., Inc. v. Allied Artists Pictures Corp.*, 632 F.2d 1135, 1144 (4th Cir. 1980); *see also Adams v. NVR Homes, Inc.*, 141 F. Supp. 2d 554, 567 (D. Md. 2001).

[18] *See, e.g.*, ECF No. 81, Ex. A at 2 (resume states that Dr. Gastman has more than five years experience in plastic surgery); *id.* at 6 (resume states that Dr. Gastman has worked and taught in the University of Maryland School of Medicine's Department of Plastic Surgery); Gastman Dep. 15:1-6 (he has treated many patients, including prisoners, with "hypertrophic, traumatic scarring"); *id.* at 9:2-8 (he has reconstructed the skin of at least one prisoner who was stabbed in the arm).

14

provides that the scar is "consistent" with Reaves being immobile. ECF No. 81, Ex. A at 1. In formulating this opinion, Dr. Gastman applied his expertise to this case; having seen a "number of defensive wounds in upper arm injury," Dr. Gastman has opined that the length and direction of Reaves's scar suggest immobility at the time of injury. Gastman Dep. 22:19-4; ECF No. 81, Ex. A at 1.

In paragraph four, Dr. Gastman's opinion that Reaves's scar does not appear to be self-inflicted is based on his observation that the scar extends to the "medial [side of his arm]," so Reaves would have needed "almost some type of sickle knife" causing "tremendous pain all the way around his arm." Gastman Dep. 27:5-18. Dr. Gastman's opinion is supported by the October 30, 2009 photograph revealing Reaves's "hypertrophic, very extensive scar." *Id.* at 17:18-20. Thus, to the extent Dr. Gastman has assumed that it would be difficult for Reaves to cut himself, this assumption is not "without factual support"[19] and does not prevent the admissibility of paragraph four.[20] The *weight* of this assumption was attacked on cross-examination and by rebuttal

---

[19] *See, e.g., Tyger*, 29 F.3d at 143 (excluding expert's opinion for lack of *any* "factual support in the record").

[20] *See, e.g., Adams*, 141 F. Supp. 2d at 567 (expert's lack of "first-hand experience" in evaluating the subject matter of her opinion was relevant only to "the weight and not to the admissibility" of her testimony; because her opinion was based on facts provided by other sources, her opinion was admissible).

evidence. That Dr. Gastman is not a kinesiology expert is irrelevant to the admissibility of this opinion.[21]

Jurors will be instructed to give Dr. Gastman's report and deposition the weight they find it deserves. Reaves's motion to exclude paragraphs three and four and accompanying deposition testimony was denied.

V.  Conclusion

For the reasons stated above, Reaves's motion to exclude evidence of his attack on Officer Nwoji and violent prison incidents that could have caused his scar will be denied; his motion to exclude untimely-identified witnesses and documents was granted; and the defendants' motion to exclude part of an expert report and accompanying deposition testimony was denied.

____6/23/11____  
Date

_____/s/_____  
William D. Quarles, Jr.  
United States District Judge

---

[21] See, e.g., Gober v. Revlon, Inc., 317 F.2d 47, 52 (4th Cir. 1963) (expert's lack of qualifications on a subject related to his expert opinion "went to the weight of his testimony, not its admissibility").